## Mallory *v.* Aspinwall.

In the Court below,

LEWIS MALLORY, JOHN MALLORY, and SAMUEL MALLORY, *Petitioners ;* WILLIAM SMITH ASPINWALL, and twenty-nine others, *Respondents.*

The mere possession by the heirs of a mortgagee, of an ancient deed releasing the equity of redemption, is sufficient evidence, that the deed was *delivered.* And such release deed, though not recorded, will preclude a redemption by a subsequent purchaser of the equity of redemption.

A. being indebted to B. by bond, was arrested in New-York, and to secure the bond, made a mortgage of land in this state to B. after which C. paid the bond, and took an assignment of the mortgage; held, that A. could not redeem, without paying to C. the sum actually advanced by him, and *seven per cent.* interest.

THIS was a petition in chancery, dated the 5th of March, 1804, praying liberty to redeem two mortgages of sundry pieces of land lying in the town of Norwalk. The material facts as stated in the petition, and found by a committee, are—That on the 11th of July, 1769, *Nathan Mallory* of Norwalk, was seized of a piece of land, lying at a place called Indian Field, containing twenty-nine and an half acres ; and of a piece containing eight acres, formerly called the homestead, now called Jerusalem lot ; and of a store, house, and wharf, lying at the head of Norwalk river ; which lands, &c. were, on the same day, conveyed to *John Aspinwall,* of Flushing, in the (then) province of New-York, by deed, to secure the payment of £ 280 : 5, New-York currency, before the 20th of April, 1772, with interest annually : That said *Nathan* continued in possession of said lands, from the date of said deed, until the 14th of November, 1789 ; when *William S. Aspinwall* and *Gilbert Aspinwall,* two of the sons and heirs of *John Aspinwall,* (then deceased) conveyed, by deeds of bargain and sale, said eight acres, called Jerusalem lot, to *Job Bartram,* and the twenty-nine and an half acres at Indian field, to *Stephen Marvin ;* who then entered into possession, and have ever since retained possession of said lands, except five and an half acres, part of Indian field, which has been conveyed to sundry persons, in whose possession it has been, and who are made parties to this petition.

That there was due on said mortgage, computing interest at *six per cent.* £ 2204, 06 : That on the 22d day of December, 1773, *Nathan Mallory* signed and acknowledged a certain instrument in writing, purporting to be a deed of quit-claim, in usual form, to *John Aspinwall,* of all his right and title to all the lands mortgaged by him to said *Aspinwall,* " which " deed" [say the committee] " being in the hands and pos- " session of the counsel for the respondents, and by them " exhibited and read in evidence before us ; from which evi- " dence *only,* we find said deed to have been delivered ac- " cordingly as mentioned in said deed ;"—which deed was lodged for record since this petition was pending : That, on the 8th of June, 1774, *John Aspinwall,* by his deed of re- lease, for a valuable consideration, released to *Mallory* all his right, interest and title, *by virtue of the aforesaid mortgage deed,* to the house, store, and wharf.

That on the 9th of October, 1772, *Mallory* was seized of seventeen acres of land, lying at Cramberry-plain, which, with another piece of eight acres on said Cramberry- plain, he, on that day, conveyed to *John Fell* of New-York, by deed of that date, conditioned for the payment of £ 140 : 3 : 8 1-2, New-York currency, the principal sum of a bond given by *Mallory* to *Fell,* on the 4th of December, 1764, to be paid at or before the 1st of October, 1775, and the lawful interest to be paid yearly.

That *Mallory* had before the mortgage, *viz.* on the 6th of February, 1766, paid on this bond to *Fell,* £ 40 : 5 : 3, New-York currency, and £ 20 : 2 : 8, like currency, on the 1st of October, 1767 : That about the 7th of April, 1772, a suit was commenced, in New-York, on this bond to *Fell,* and the body of *Mallory* was arrested ; and *John Aspinwall* gave special bail for him, and promised to pay the debt and costs, or deliver him up in six months, if the proceedings against him should be stopped : That he never was delivered up.

N n

That on the 23d of April, 1775, *Paschall N. Smith* paid to *Fell* on said bond £ 50 New-York currency ; and on the 1st of August, 1784, the executors of *John Aspinwall* paid £ 179 : 9 : 41-2 New-York currency, in full of said bond, including interest and costs ; which two last payments were made for the benefit of the heirs of *John Aspinwall* : And on the 6th of August, 1784, *Fell's* attorney received the costs in said suit.

That on the 28th of April, 1785, *Fell* released to *Paschall N. Smith*, in trust for the heirs of *John Aspinwall*, the lands on Cramberry-plain mortgaged to *Fell*. On the 18th of May, 1789, *Smith* conveyed the seventeen acres aforesaid to *Micajah Nash ;* and on the 27th of June following, he conveyed the said eight acres to *Noah Patrick*. And the last mentioned piece having passed through the hands of sundry persons, who are made parties to the petition, is now in the possession of *Alvin Hyatt*, one of the respondents. *Mallory* remained in possession of the seventeen acres on Cramberry-plain from the 18th of December, 1764, until the 18th of May, 1789 ; when *Micajah Nash* took possession, and has ever since retained it ; and *Mallory* also remained in possession of said eight acres, from said 18th of December, 1764, until the 21st of December, 1789, when *N. & S. Patrick* took possession ; and the possession has ever since remained with the *Patricks*, and their assigns.

It also appeared from the report of the committee, accepted by the Court, that there was due on the *Fell* bond, computing the interest at *six per cent.*, and deducting the payments made by *Mallory*, the sum of $ 815, 74 ; that the rents and profits upon the lands mortgaged to *Fell*, since they came into the possession of his assignees, with the waste done thereon, amounted to $ 572, 8 ; and the necessary betterments made within the same time amounted to $ 297, 90 ; and that said lands are now worth $ 785. On the 22d of December, 1803, for the consideration of $ 300, *Nathan Mallory* conveyed to the petitioners, by

deed of release, all his right to the several pieces of land mortgaged to *John Aspinwall* and to *Fell.*

The Court also found, that since the report *Nash* had received $ 10, 20, and *Hyatt* $ 21, rents and profits from the Cramberry-plain lots. The Court also found the debt due on the *Fell* mortgage, with the betterments, amounted to $ 2082, 92, leaving due to the respondents, after deducting the rents and profits, $ 1479, 72 ; upon the payment of which sum, with the costs, to *Nash* and *Hyatt*, they were ordered to release to the petitioners. And as to the *Aspinwall* mortgage, the decree was, that the petitioners take nothing by their petition, and that the respondents recover their cost.

The errors assigned were,

1. That the Court ought to have decreed a redemption of the *Fell* mortgage, upon the payment of $ 815, 74, the sum found due by the committee, from which sum the rents and profits should have been deducted.

2. That the Court ought to have permitted the redemption of the *Aspinwall* mortgage.

3. That the Court taxed cost against the petitioners ; whereas, if taxed at all, it should have been added to the sum found due on the bond, and decreed to be paid only upon redemption of the lands.

*Smith*, (of Woodbury,) and *Williams*, (of Hartford,) for the plaintiffs.

The petition prays for liberty to redeem two separate and distinct mortgages, the mortgage to *Aspinwall*, and the mortgage to *Fell.* The mortgage to *Aspinwall* was made in 1769, but possession was not taken under it, until November, 1789. A release deed of the lands mortgaged to *Aspinwall* was signed, and acknowledged, by *Mallory*, in Decem-

ber, 1773 ; and in January, 1774, *Mallory* received from *Aspinwall* a release of some of the property so mortgaged. The Court refused to permit the redemption of the lands included in this mortgage.

The other mortgage was given to secure a bond given to *Fell*, in 1764, upon which sundry payments had been made by *Mallory*, before the date of the mortgage. About six months before the date of this mortgage, *Mallory* was arrested in New-York, upon this bond ; and *John Aspinwall* became his bail, and promised to pay the debt and costs, or deliver him up in six months, if the proceedings should be stopped. The representatives of *Aspinwall* afterwards paid to *Fell* what was due upon this bond, and received an assignment of the mortgage. The committee found, that there was due upon the bond to *Fell* $ 815, 74 ; that the betterments upon these lands amounted to $ 297, 90 ; and it appeared that the rents and profits, while these lands were in the possession of the assignees of *Fell*, amounted to $ 603, 28. The Court found the facts stated by the committee to be true, and yet decreed, that the plaintiffs should redeem *only* upon the payment of $ 1479, 72. The petitioners being the purchasers of the equity of redemption in both these mortgages, claim that they ought to have been permitted to redeem the *Aspinwall* mortgage ; and that they have right to redeem the *Fell* mortgage, upon the payment of $ 510. 36, which is the amount of the *Fell* bond, as found by the committee, and the betterments on the land, deducting the rents and profits.

I. As to the *Aspinwall* mortgage,

The objections to the redemption of this estate, are,—That the plaintiffs have no interest ;—or if they have any, that it is the legal estate ; that there has been a settlement of this mortgage, and a release deed given.

1. The deed to the plaintiffs, it is said, is void ; and they, therefore, have no interest. If *Nathan Mallory* had, as is

claimed, the rights of a mortgagor, then he might convey his interest, although not in the actual possession ;—for the possession of the mortgagee is the possession of the mortgagor. This point was settled in this Court, in the case of *Sanford* v. *Washburn.* (a) It is said, the release deed here existing distinguishes this case from that. The effect of that deed will be afterwards considered ;—but if it is to have any operation, the defendants need not resort to it for this purpose.

2. It is said, that if the plaintiffs have any interest, by the deed of *Nathan Mallory*, they have the legal title, *Mallory* having been in possession more than fifteen years after the execution of the deed to *Aspinwall.* But to gain title by possession, the lands must, in the language of our statute, (b) be *withheld* from the owner ; there must have been an actual disseisin, or ouster ; (c) the mere taking the rents and profits is not sufficient. There is no evidence here, that *Mallory* claimed by a title adverse to *Aspinwall's.* Where the possession of the party in possession is equivocal, his subsequent acts may be admitted to explain the nature of his possession. As if a son is in possession of the house of his father more than fifteen years, and pays no rent, and yet makes no claim, but afterwards, upon the request of the father, leaves the house ; this is evidence, that he did not claim against, but under his father. (d) Here, *Mallory* having no record title, and waiving any claim he might have made, and going out of possession when requested, never could recover in a court of law, as having held by an adverse title. Besides, the defendants have no right to say, that the plaintiffs shall set up an unconscionable claim, even although they had the legal right.

(a) 2 *Root* 506.
(b) *Stat.* 254, *edit.* 1796.
(c) 5 *Burr* 2607, *Fairclaim* v. *Shackelton.* 2 *Ld. Raym.* 829, *Reading* v. *Rawsterne.*
(d) *Cro. Car.* 303, *Blunden* v. *Baugh.*

Again, as the *Aspinwalls* gave deeds of this property in 1789, claiming to be the legal owners, while *Mallory* was in possession, they are now estopped to say, that they were not the owners,—thus contradicting their own deed, and accusing themselves of a crime within the statute against selling pretended titles. If *Mallory* was in possession as mortgagor, it cannot be pretended, that he could gain title by possession ; but it is said, this release deed changes his situation. As to third persons, this deed must be considered as of no force, as not existing ; as it was not recorded, a purchaser had good right to suppose him in under the mortgagee. But it is said, that *Mallory* gained a title before the purchase by the plaintiffs. What cannot be done directly, cannot be indirectly accomplished. Upon the records, the plaintiffs found an equitable title only to exist in *Nathan Mallory*. To the records they had a right to look for the evidence of title ; and a deed not appearing there can be of no avail, and, indeed, is no evidence, against third persons.

3. It is contended, that the parties settled this, more than thirty years ago, by mutual releases of certain parts of the property. But these releases were not made at the same time ; nor did *Mallory* release a part, but the whole three pieces. No settlement, therefore, was made, though there might have been some negotiation. Besides, *Aspinwall* released all the right in the store, house and wharf, which he had *by virtue of said mortgage deed*, and nothing more ; consequently, if the deed of release of December 22d, 1773, had then been actually executed, *Mallory* gained nothing by the release.

4. The release deed is relied upon to preclude a redemption ; as to which there is no evidence, that it was ever delivered ; and delivery is the essence of a deed. (*e*) Without delivery, a deed is no better than old parchment. (*f*) It does not appear, whether the witnesses were alive, and to be had,

(*e*) 2 *Rep.* 5, *Goddard's case.*
(*f*) 2 *Bac. Abr.* 648, *Guil. ed.*

1806.

MALLORY
v.
ASPIN-
WALL.

or not : nor that they were called ; nor that any evidence existed, as to the delivery, except the single fact, that more than thirty years after it purports to have been executed, it first appears in the hands of the respondents' counsel. Had possession of the land accompanied the deed, this would have afforded presumptive evidence of the delivery ; but *Mallory* retained the land for sixteen years after this deed was dated. The possession after that time, by the assignees of *Aspinwall*, may, with more propriety, be referred to the mortgage, than to the release ; because from the nature of the instruments, immediate possession would have followed the latter ; and probably would not have accompanied the former. But the circumstance, that a few days after this pretended release, *Aspinwall* released to *Mallory* all his right to the store, house and wharf, *derived from the mortgage,*—shows conclusively, that this deed could not have existed at that time ;—for if it did, *Aspinwall's* release must have been perfectly nugatory. Had it been really delivered, when it purports to have been, surely some other evidence could have been given than the naked fact, that the respondents' counsel have it, thirty years after it was executed.

But, it is contended, that the committee having found the delivery, the evidence upon which they found it is not to be inquired into. If the committee have made a wrong inference from the facts ; and the facts are stated by them, so that this can appear to the Court ; there can be no doubt, that the Court will reject the inference. But the committee have not done this ; they say, that the deed was signed and acknowledged,—and state the facts attending the possession.—and then say *from which facts only we find said deed to have been delivered as mentioned therein.*

Further, the deed is of no effect, because it was not recorded. The policy of our law is, that all transfers of real estate, whether by deed, devise, descent or execution, shall appear upon record. The words of the statute are—" No grant or

" deed of bargain and sale, or mortgage, of any houses or
" lands. &c. shall be accounted good and effectual," &c. (*g*)
An equity of redemption is considered as land, or real es-
tate; as such it will descend; (*h*) as such it must be de-
vised ; passed by deed ; barred by possession, or a common
recovery ; subject to curtesy, and, by our law, to dower. (*i*)
The statute requiring a record of the levy of an execution
is similar to this.   But, was it ever supposed, that the levy
upon an interest of this kind need not be recorded ! Fre-
quently, the greater interest is in the mortgagor ; and if
an estate may be mortgaged for a trifle, and then the mort-
gagor convey his interest without any record evidence of it,
the whole design of our law would be defeated.   And it
can make no difference, that this was a conveyance to the
original mortgagee ; it is no less a sale to him, than it would
be to any other person.

II.  As to the *Fell* mortgage.

The Superior Court could make out the amount of debt,
as they have done, only by considering the sum paid by the
representatives of *Aspinwall* as principal, and casting *seven
per cent.* interest thereon ; and then, it would seem, that
they must have computed interest annually.   The defend-
ants do not claim, that they are entitled to annual interest.
But it is contended by them, that the sum paid by the re-
presentatives of *Aspinwall* should be considered as principal,
and *seven per cent. interest* cast thereon.

The obligor lived in this State ; the lands lie in this State ;
the bond ought, therefore, to draw the interest of this State.
Where a debt was contracted in England, but security given
in Ireland, upon an Irish estate, Irish interest was allow-
ed. (*j*)   But where a mortgage was made in England, of

(*g*) *Stat.* 417, 418, *edit.* 1796.
(*h*) *Pow. Mort.* 109.
(*i*) 2 *Root* 505, *Sanford* v. *Washburn.*
(*j*) 2 *Atk.* 382, *Connor* v. *Earl of Bellamont.*

land in the West-Indies, English interest only was allow-
ed. (k) Where the subject matter relates locally to a state,
as a will of lands, or a mortgage, it must be executed ac-
cording to the laws of that state. (l)

But, it is contended, that the situation of these parties is
changed, by the payment made to *Fell*, and the consequent
assignment of the mortgage to *Smith*. Where a mortgage
has been assigned with the *concurrence* of the mortgagor,
the sum paid by the assignee has been considered as princi-
pal. (m) Here is no evidence of *Mallory's* assent to this
assignment. Nor does it appear, that the money was paid
at his request, or in fact that *Aspinwall* was, or could have
been, compelled to pay it. For it does not appear, that judg-
ment was obtained, by which *Aspinwall* became liable as bail;
nor that proceedings were stopped upon *Aspinwall's* promise
to pay in six months, or deliver up *Mallory*. But if the pro-
ceedings were stopped upon this promise; yet from the
time when this mortgage was given, two days only after
the expiration of the six months, there can be no doubt,
that *Fell* received this mortgage in preference to any benefit
he expected to derive by the arrest of *Mallory*. The res-
pondents, therefore, are to be treated as mere purchasers.
But whatever might have been the terms imposed upon
*Nathan Mallory*, the purchasers of the equity of redemption
may redeem upon paying the original debt, and interest.
The land is merely pledged for the debt. (n) And the as-
signee of the mortgage can, in chancery, be in no better
situation as to the sum to be paid to him, than if he had
brought a suit upon the bond. (o) And, surely, in this
State, where it is intended, that the actual state of the pro-

(k) 3 *Atk.* 727, *Stapleton* v. *Conway.*
(l) 2 *Burr.* 1079, *Robinson* v. *Bland.*
(m) 3 *Atk.* 271, *Ashenhurst* v. *James.*
(n) *Prec. Chan,* 89, *Bayly* v. *Robson.*   *Prec. Chan.* 512, *Coleman*
v. *Wince.*   1 *Eq. Ca. Abr.* 325.
(o) 4 *Ves. jun.* 128, *Matthews* v. *Wallwyn.*

O o

1806.

MALLORY
*v.*
ASPIN-
WALL.

perty should appear upon record, it would be hard, indeed, to make the grantee of the mortgagor pay more than what appears by the records to be due.

*Ingersoll*, and *Daggett*, for the defendants in error.

The plaintiffs in error, in the Court below, sought to re-deem two mortgages,—one called the *Aspinwall*,—the other the *Fell* mortgage. These mortgages being distinct, de-serve distinct considerations.

The Superior Court decreed the redemption of the *Aspin-wall* mortgage. This judgment, we contend, ought to be affirmed.

I. The quit-claim deed from the mortgagor to the mort-gagee, on the 22d of December, 1773, bars all right of re-demption.

The objection to this is, first, that the delivery of this deed is not found. We answer, that the committee to whom was referred this petition to report the facts, state that the deed was in possession of the counsel for the res-pondents ; and this was the only evidence on which they found it to have been delivered. They had previously stated, that it was signed, witnessed, and acknowledged.— It is entirely unnecessary on what quantity of evidence the committee came to their result. This Court will never say, that the proof was insufficient. But if this Court were to inquire, is not proof derived from the possession of a deed of thirty years old, conclusive of its delivery ?

Secondly, it is objected, that this deed was never recorded, and therefore it shall not operate against the purchasers of the equity of redemption, though good against the grantor. We answer,—the statute does not, in its letter or spirit, re-gard such deeds. The object of the legislature was, that on the town records the legal title should appear. In this case,

the purchaser, by inspecting these records, would see, that the legal title to this estate was in *Aspinwall.* This should prevent him from purchasing, unless on speculation ; but no guard was intended to be placed to benefit speculators. To say, that all the equitable circumstances existing between mortgagor and mortgagee must appear on the records, would be saying too much. The purchaser takes the estate with all this equity.

At any rate, this deed may operate to prevent any accounting for rents and profits, on the part of the mortgagee. Surely, a bond, covenant, or agreement, by which the mortgagor discharged the mortgagee from accounting for rents and profits, would be valid, without being recorded. This deed might well operate thus far.

II. This title of the plaintiffs, as stated on the petition, and found by the committee, was a legal title, *Mallory* having been in possession from December, 1773, to December, 1789, almost sixteen years after the quit-claim deed was given, during all which time he acknowledged no right or title in *Aspinwall,* but took the whole rents and profits to himself. In his petition, he seeks the interposition of the Court to obtain the *legal* estate ; but by the facts, he has it already. Then he has adequate remedy at law. To say that a court of chancery will decree in such a case, is to say, that a decree is necessary to render valid a title already legal and perfect.

III. The deed of *Nathan Mallory* to the plaintiffs was void under our statute against selling pretended titles. This deed is dated in 1803. *Aspinwall's* grantees were in possession taking the whole rents and profits, and claiming title by the original mortgage, and by the quit-claim deed. To be sure, the possession of the mortgagee is in unison with that of the mortgagor ; and therefore, had there been no quit-claim deed, the statute would not have operated ; but *that* makes the possession of *Aspinwall* adverse, and of course brings the deed within the mischiefs of the statute.

It will be recollected, that the mortgagor remained in possession till 1789 ; and then the mortgagee entered, and his grantees have held the possession ever since.

We contend, also, that the release deed of *Aspinwall,* the mortgagee, fourteen days after the quit-claim above mentioned, of part of the property to the mortgagor, is to be considered as proof of a settlement of this mortgage in January, 1774.——Finding that thirty years ago, the parties to this mortgage thus released their rights to certain portions of this property, andthat a possession of nearly fifteen of the last years is found correspondent thereto, the Superior Court might well deny any right of redemption in the mortgagor, or his assignees.

The Superior Court permitted the plaintiffs to redeem the *Fell* mortgage, so called. The plaintiffs, however, complain, that the terms are inequitable ;——that they ought to be permitted to redeem on payment of the bond, and the interest thereon. We insist, and so the Superior Court decided, that the payments made by *Smith,* and others, for the heirs of *Aspinwall,* shall be considered as principal from the time when made, and thereafter draw interest. We admit the rule to be, that the assignees of a mortgage, purchasing without the concurrence of the mortgagor, shall relinquish it, upon the payment of the original debt, and simple interest ; but if the purchase be made at the request of the mortgagor, interest shall be turned into principal. Such is the rule as laid down in *Ashenhurst* v. *James.* (*h*) Now, in this case, it clearly appears from the facts found by the Court, that this bond was paid by *Aspinwall's* heirs, in consequence of his having given special bail for *Mallory* in New-York, when he was arrested on the bond. When bail pay money for the principal, it is always presumed to be upon request. The case, therefore, is within the rule established upon equitable grounds.

(*h*) 2 *Atk.* 371.

The plaintiffs further say, that interest should be cast at *six per cent.* We contend, that the payment being made in New-York, where the legal interest is *seven per cent.* interest ought to be computed at that rate, according to long established practice.

The judgment of the Superior Court was reversed;—not, however, for any error in the *principles* assumed by that Court in the decision ; but for a mere mistake in the calculation of interest.

## Hempstead *v.* Bird.

### In the Court below,

ROBERT BIRD, HENRY M. BIRD, and BENJAMIN SAVAGE, *Plaintiffs ;* JOSHUA HEMPSTEAD, and JOHN I. CLARK, *Defendants.*

THIS was an action of trespass for the ship *Ocean.*

The plaintiffs stated, that they had advanced sundry large sums of money to *Gurdon I. Miller ;* and, as security therefore, *Miller* assigned to them this ship, by an intsrument in nature of a bottomry bond,—granting them the exclusive right to her during a voyage from New-York to New-London, and thence to London : That the plaintiffs received the ship, put on board a master, expended money in repairs, and proceeded with her to New-London, where the defendants seized and detained her thirty days ; whereby the voyage was delayed, and they put to great expense, &c.

*In an action of trespass, by A. for a ship, he cannot, to aggravate damages, be permitted to prove, that a writ of replevin, taken out by B. in his own name, for the ship, was, in fact, procured by A. for his benefit—especially, when this is not stated as a ground of damages in the declaration.*

*Whether, in case the subscribing witnesses of a bond live in another state, the acknowledgment and hand-writing of the obligor may be proved?*

*Whether the defendant can avail himself of the bankruptcy of one of the plaintiffs on a motion in arrest ?*

*Whether the Court may direct a party to strike out part of a motion in arrest, because it is an attempt to re-examine the weight of evidence ?*