## PETER GREEN *et al. versus* The Inhabitants ot CHELSEA.

A deed of conveyance thirty years old, under which the grantee and his successors have held constant possession, is admissible in evidence without proof of its execution.

A deed of land, bounding it " on the sea or salt water," was *held* to have conveyed the flats adjoining the upland described, although the use of the flats by the public, and the grantee's own acts, tended to show that the grantee did not consider the flats to be included in the deed.

The devisee of vacant and unoccupied land has, by operation of law, without an entry, such a seisin as will enable him to maintain a writ of entry.

Where the land devised, and of which the testator died seised, consisted of flats which were never enclosed, and of which no one had the exclusive occupation or claimed the ownership, but which were used by all persons, coming by land or water, who might have occasion to pass over them or to make some brief use of them by landing wood and other articles thereon, it was *held* to be vacant and unoccupied land, of which the devisee would acquire a seisin without an actual entry.

The use of land on the sea-shore, by the individual inhabitants of a town, as a landing place, does not tend to show a possession by the town in its corporate capacity, but, on the contrary, is adverse to the claim of such a possession.

The omission by the owner, to fence in a parcel of land or flats bounding on the sea or salt water, and the occasional use of it by all persons having occasion to land wood and other articles thereon, do not prove a dedication of it to the public.

On a writ of entry to recover such a parcel of land or flats, reputation as to the ownership is not admissible in evidence.

THIS was a writ of entry brought by Peter Green and Jonathan Green, counting on their own seisin, to recover an undivided moiety of a parcel of land in Chelsea, at the north-easterly end of Chelsea bridge, beginning at a point in the old county road six rods west of the bridge, thence running southerly to low-water mark, thence easterly by low-water mark twenty-seven rods to a point one hundred feet from the western boundary of flats now or formerly belonging to the Watts farm, thence by a line running westerly, and distant one hundred feet from such western boundary to the old county road, thence turning and running by that road westerly to the point of beginning.

The premises claimed in the writ included a portion of flats westerly of the bridge, as to which the tenants disclaimed ; and as to the residue they pleaded the general issue.

At the trial it was admitted, that the premises in dispute

consisted of a small strip of upland, not fenced off, southerly of the county road, together with a beach and flats, which latter were overflowed by the tide.

The demandants stated, that Benjamin Brintnall conveyed the premises, with other lands, to their grandfather, Jonathan Green 1st, by two deeds dated March 6th, 1769, and February 4th, 1772 ; that Jonathan Green 1st died seised of the demanded premises in 1795, and by his last will devised the same to his two sons, Jonathan Green 2d, (the father of the demandants,) and Jesse Green, in equal shares ; that Jonathan Green 2d died seised of the same in 1820, and devised the same to the demandants ; and that the same were vacant land, chiefly flats covered with water at high tide, and therefore the demandants became, without actual entry, seised of the same.

Among other evidence, the demandants introduced the deed of February 4th, 1772, from Brintnall to Jonathan Green 1st, which they contended embraced the premises in dispute, conveying a parcel of land containing twenty-two acres, " bounded southerly on the sea or salt water, westerly and northerly on land of the said Jonathan Green, easterly on land owned by the heirs of Samuel Watts, Esq., deceased, as the wall now stands until it comes to the turn of the wall by the tomb, then keeping the same course of said wall where there is an old foundation of a wall about six or eight feet east of the stone wall, that is, southerly of said tomb so far as said wall goes, thence extending yet southerly the same course of said old foundation of said wall until it comes to the sea."

The tenants required the execution of this deed to be proved in the usual way, or, if it was offered as an ancient deed, they required evidence that possession of the demanded premises had accompanied and followed the deed. And the demandants offered the testimony of Benjamin Watts, who testified that he knew Brintnall ; that he had seen him write his name, and that he thought the signature of the deed exhibited was his signature ; that Brintnall sold the westerly farm first to Green (embraced in the deed of 1769) and lived on the easterly farm (embraced in the deed of 1772) many years afterwards ; and that after he left the easterly farm,

Green occupied it ; and that there was always a wall on the northerly side of the county road, but no fence on the other side. The deed of 1772 was admitted by the judge, subject to the tenants' exception.

The demandants introduced the will of Jonathan Green 1st, dated July 18th, 1795, in which, after devising certain lands described, not including his lands in Chelsea, he gives to each of his sons, Jonathan Green 2d and Jesse Green, in fee, " the one half of all my lands that I have not herein particularly given away." Also the will of Jonathan Green 2d, dated in 1812 and approved on the 25th of April, 1820, in which, after devising certain lands in Stoneham, he gives to his sons Jonathan and Peter Green in fee, all the rest of his real estate.

It was testified that Jonathan Green 1st removed from Chelsea to Stoneham after he sold his farm in Chelsea to Aaron Dexter, which was in 1791, and resided in Stoneham till his death ; and that Jonathan Green 2d always resided in Stoneham. There was no evidence of an entry by Jonathan Green 2d upon the premises in dispute.

The demandants alleged that the premises were vacant land in the occupation of no one, and flats covered with water , that therefore, on the decease of Jonathan Green 1st, the ownership of the land being by virtue of his devise in Jonathan Green 2d, the latter became seised of the same without an actual entry ; and that on his decease, by virtue of his devise, the demandants became seised of the same without an actual entry.

The demandants here rested their case.

The tenants objected that no entry was shown ; that vacancy of possession was not to be presumed ; and that this land, being in a settled country, was not such vacant and unoccupied land as would pass to a devisee without entry. The judge ruled that the facts proved by the demandants supported their action sufficiently to put the tenants on their title ; which question was reserved.

The tenants contended that the deed of 1772, from Brintnall to Jonathan Green 1st, did not convey the premises in question ; that Jonathan Green 1st, having conveyed, was not

in possession or seised of the premises at the time of his decease ; that Jonathan Green 2d, never having entered, was not seised of the premises at the time of his decease ; that from time immemorial this place had been used as a town landing, and had been claimed by the town, with no adverse claim ; that their possession, with claim of ownership, had been exclusive, so far as the nature of the property would permit, for over thirty years ; and that the town having been in exclusive possession for a length of time, even if it were less than thirty years, the circumstances were such as would authorize the presumption of a grant and conveyance of the fee and support the possession.

The town of Chelsea was incorporated in 1738. It had previously been a part of Boston, and the place where the land in question was situated, was called Winnisimmet.

The tenants read extracts from the records of Chelsea. Under date of March 7th, 1743, was a warrant, " to consider a proposal of some inhabitants about building a wharf at the town's landing place." March 10th, 1766 ; " Voted to dismiss the request inserted in the warrant, concerning the building of a wharf at the town's landing." March 26th, 1806 : " Warrant to see if the town will choose a committee as requested by Mr. W. Hall, to treat with him respecting building a wharf on the town's landing near Chelsea bridge." On April 7th, a committee was chosen, and on May 5th it was voted not to accept Hall's proposition. In 1825, it was voted to lease the landing place near Chelsea bridge to J. Pierce and T. Green for one year, for $ 350. In 1827, it was voted that the selectmen cause all incumbrances to be removed from this landing place, that the same may be let at May meeting. In May, 1827, it was let by the town to S. Chittenden ; in 1830, to Thomas Williams ; and in 1831, to Thomas Williams for ten years, with certain reservations.

The tenants also introduced testimony tending to prove that for more than forty years the disputed premises had been used by any of the inhabitants of Chelsea, and by other persons, for the purpose of landing thereon timber, wood, bark, stones, and other things, and getting sea-weed therefrom ; and for more than forty years had been called the town's landing.

The tenants asked permission to prove, in connexion with the facts appearing by the records of the town of Chelsea and other documentary evidence in the case, and the testimony respecting the possession, use and occupation of the demanded premises, that the same have always, within the memory of living witnesses, been commonly reputed to be the property of the town and claimed as such, being parcel of a tract of land commonly known by the name of the town landing or Chelsea landing, and that the same was commonly reputed to be a common landing place at the time when Jonathan Green, the grandfather of the demandants, lived on his farm in Chelsea, and not to be the property of Green, but the property of the town, and that ancient persons now deceased, who were conversant with the premises more than sixty years ago, stated to living witnesses, that the land had always, within their memory, been used as a public landing place, and been commonly reputed to be the property of the town, and that they had so heard respecting it from their fathers and other ancient persons, inhabitants of the town, then deceased ; and also to prove the testimony of ancient witnesses, now deceased, on the trial of a writ of entry brought by the United States, claiming title under Jonathan Green 1st, against the inhabitants of Chelsea, wherein the same premises were demanded.

The judge thereupon ruled, against the exception of the demandants, that reputation as to the *name* of the place was admissible ; and against the exception of the tenants, that the residue of the proposed testimony was inadmissible.

The tenants thereupon examined a witness, who testified that this place was always called the town's landing, according to his remembrance ; that he had heard ancient people many years ago call it by this name.

The tenants also put into the case a deed of mortgage, dated May 23d, 1782, from Jonathan Green 1st, to one Putnam, and a deed dated January 31st, 1791, from Jonathan Green 1st to Aaron Dexter, in which conveyances Green bounds his farm southerly on the old county road.

The demandants introduced testimony to rebut the tenants' evidence.

Peter Hay, one of their witnesses, testified that on the 12th

of September, 1831, Peter Green and Jesse Green took possession of the disputed premises as heirs of their grandfather, Jonathan Green 1st, and gave written notice thereof to the town of Chelsea.

The jury were instructed, that the evidence of title and possession in the town was not sufficient to bar the demandants ; that there was not sufficient ground to justify the presumption of a grant of a fee to the tenants ; that the deed of 1772, from Brintnall to Green, included and conveyed the demanded premises, and with the other evidence in the case vested a sufficient seisin and title in Green ; that the deed from Green to Dexter, in 1791, did not convey the demanded premises, and that the same passed by the devise, in 1795, to Jonathan Green 2d ; that no entry by him was necessary, under the circumstances, and that he died seised in 1820 ; and that by virtue of his devise and the other evidence in the case, the demandants were entitled to a verdict, subject to a question of law.

Whereupon it was agreed, that if the Court should be of opinion that the instructions and the several rulings in the cause were right in point of law, and that the jury would not have been justified by the evidence in finding a verdict for the tenants, a default should be entered ; and that otherwise the demandants should be nonsuited or a new trial be ordered, as justice might require.

*April 2d,*
*1836.*

*Dexter* and *Gardiner*, for the tenants.

*C. G. Loring* and *E. G. Loring*, for the demandants.

*August 27th,*
*1836.*

MORTON J. delivered the judgment of the Court. It is sometimes said that ancient instruments prove themselves. And it is an old and well settled rule of evidence, that registered deeds which appear to be thirty years old, and which have been followed by a possession under them, may be given in evidence without any proof of their execution. After such a lapse of time the witnesses are presumed to be dead. And it is said to be a peremptory rule of law, found to be both safe and convenient, that after a lapse of thirty years, a deed unaccompanied by any circumstances of suspicion, may be admitted without any proof of its execution. Co. Lit. 6 *b* ; 3 Bac. Abr. (Dodd's ed.) 296, *Evid. F.* ; Bull. N P. 255 , 1

Stark. Ev. 343 ; 1 Phil. Ev. (6th ed.) 458 ; *Jackson* v. *Blanshan,* 3 Johns. R. 292 ; *Doe* v. *Phelps,* 9 Johns. R. 169 ; *Doe* v. *Campbell,* 10 Johns. R. 475. This rule has been adopted in this State by direct adjudication, and has ever been recognised and practised upon in our courts. *Stockbridge* v. *West Stockbridge,* 14 Mass. R. 257 ; *Tolman* v. *Emerson,* 4 Pick. R. 160. Its utility and wisdom have recommended it to universal acceptance, and we find it recognised wherever we can trace it. *Joce's Lessee* v. *Harris,* 1 Har. & M'Hen. 196 ; *Hoddy* v. *Harriman,* 3 ibid. 581 ; *Carroll* v. *Norwood,* 1 Har. & Johns. 174 ; *Thompson* v. *Bullock,* 1 Bay, 364 ; *Middleton* v. *Mass,* 2 Nott & M'Cord, 55 ; *Roberts* v. *Stanton,* 2 Munf. 129 ; *Lee* v. *Tapscott,* 2 Wash. 276 ; *Shaller* v. *Brand,* 6 Binney, 435 ; *Mallory* v. *Aspinwall,* 2 Day, 280.

The deeds of B. Brintnall to J. Green 1st, were more than sixty years old, and the grantee and his successors have held possession under them to the present day. Whether the occupation was exactly coextensive with the land described in the deed or not, is immaterial upon the question of its admissibility. The introduction of the testimony as to the handwriting of the grantor was supererogatory, but in no way objectionable, except on account of its inutility.

That Brintnall's deed of 1772 included the land in controversy, we entertain no doubt. A boundary " on the sea or salt-water," with the aid of our ordinance of 1641, not only includes all above high-water mark, but also extends to low-water mark when it does not exceed one hundred rods.

It is true that the omission of the demanded premises in the mortgage to Putnam and the absolute deed to Dexter, and the frequent and unrestricted use of them by the public, tend to show that the grantee of the farm did not consider them included in the conveyance to him. But the small value, the inconsiderable use, and the open, unenclosed state of them, in some measure explain and account for this conduct. But a man's misapprehension of his legal rights will not impair his title, nor restrict the natural and obvious construction of his deeds.

The demandants declare upon their own seisin, and to maintain their action they must show a seisin in themselves,

Green
v.
Chelsea

since the death of their father.    Jonathan Green 1st, oy virtue of and under his deeds, took possession of the land conveyed and became seised of all that was included in the description, whether in fact he ever put his foot upon every rod of it or not.    He conveyed the farm or tract of land to Dexter, excluding in the description the demanded premises ; and therefore remained seised of them, as well as of the fee of the land over which the road was laid.    By the residuary devise in his will, he gave these premises to J. Green 2d.    But the latter never had actual possession, or made any formal entry into them.    And the tenants deny that he ever became seised during his life.    If he ever had a seisin, it was conferred by mere operation of law.    No adverse possession or actual disseisin interposed to arrest or obstruct his legal investiture. The occasional acts of Dexter clearly could not, in direct contravention of the terms of his grant, indicate a claim of possession or amount to a disseisin of the true owner.

Had J. Green 1st died intestate, the law would have cast the inheritance upon his heirs.    But the law, wisely or unwisely, makes a difference in this respect between an heir and a devisee. And while, by its own force, it invests the one with a legal seisin, it requires of the other an actual entry or some equivalent act. *Brown* v. *Wood*, 17 Mass. R. 74.    Why the acceptance of a devise should not be deemed equivalent to an entry and place the devisee in as good a situation as an heir, it is not easy to discern.    But without impugning the rule, we must refer to an exception, which exempts from its operation waste and vacant lands.    In such cases, an entry would be a useless, unmeaning ceremony, ousting no one and giving notice to no one, and not required by any reasonable principle of law. This is said to be peculiar to our Commonwealth, but it has long been established and acted upon here, has proved wise and beneficial in its operation, and is now a fixed and settled rule of property, which can only be changed by legislative power. Stearns on Real Actions, 33, 72 ; 4 Dane's Abr. 21, § 17, *Wells* v. *Prince*, 4 Mass. R. 64 ; *Ward* v. *Fuller*, 15 Pick. 190.    It is not, as the tenants' counsel argue, confined to wild and uncultivated land ; but extends to all vacant unoccupied lots, whether in the city or in the wilderness.    And it is some

what remarkable that most, if not all the cases that have oc- curred, in which the doctrine has been enforced, related to lots in the city of Boston.

That the demanded premises come within the description of vacant land, is apparent from all the evidence. No one ever pretended to have exclusive occupation of them ; they never were enclosed ; but appear to have been used indiscriminately, and, as far as they were used at all, by townsmen and strangers, coming by land or by water, as they might have occasion to pass over them or make some brief and trifling use of them. But nothing is shown indicating, in any one, the claim to a right to the possession, or the ownership either of the fee or an easement.

Upon these principles, J. Green 1st, being seised at his death, might effectually devise the demanded premises ; his will acting upon them, vested the seisin in J. Green 2d, who devised them to the demandants. After his death, they became seised and must now prevail, unless the tenants can show some defect in their title or establish a better one in themselves.

The first claim of the tenants is, that they have acquired a title to the estate by possession. A corporation can only show possession by proof of corporate acts. The various acts of individuals upon the land, if they are evidence of the possession of any one, cannot enure to the benefit of the tenants They did not act by the authority of the town. And their user of the premises, if it be evidence of any thing, may tend to show an easement in the inhabitants of the town or in the public ; but, instead of maintaining the possession of the tenants, is clearly adverse to their claim. *Commonwealth v. Newbury*, 2 Pick. 51 ; *Commonwealth v. Low*, 3 Pick. 408. And although the grant of a fee as well as of an easement, and a grant to a corporation as well as to an individual, may be presumed ; yet an occupation, for any length of time short of twenty years, is not of itself even *primâ facie* evidence of it. See cases cited in 3 Stark. Ev. 1215, 1221, and 1244. And there is no evidence that the town, by any corporate act, has asserted any claim or attempted any occupation for more than half that time. The earlier votes of 1742 and 1766, cannot

aid them, because it does not appear that any act was done in pursuance of them, or that they refer to the premises. It is therefore very clear that there is no evidence in the case from which a jury would be authorized to presume a grant of any kind to the town. And if the public acquired an easement, of which there is no sufficient evidence, it would be no obstacle to the demandants' recovery.

The doctrine of dedication, if it be adopted in this State,[*] does not extend to land like the demanded premises ; and if it did, would not bar this action. Dedication must originate in the voluntary donation of the owner of the land and be completed by the acceptance of the public. And to support a dedication there must be such a user and so accompanied by corroborating circumstances, as clearly to demonstrate both. Now here does not appear to be a user sufficient to show either. And it is unaided by any acts on the part of the owner indicative of an intent to give the use of this land, or on the part of the public to accept it. The occasional, trifling and irregular use made of the land or flats, is altogether too imperfect an occupation to prove a dedication. But if a dedication were established, it would be only of the use and not of the land itself ; a mere servitude, which leaves in the owner of the fee a right to recover and hold the possession for all purposes not inconsistent with the public easement.

The justice who presided at the trial, went far enough in permitting the tenants to prove that the premises were called the town landing and known by that name, and did right in excluding evidence that it was *reputed* to be the town's property. Reputation is never evidence of title, nor is it ever admissible in support of private rights. There are some cases in which, for peculiar reasons or from necessity, it is received. But they are few, and this is not one of them. See 1 Stark. Ev 58 to 64, and cases cited.

*Tenants defaulted.*

[*] See *Hobbs* v. *Lowell*, 19 Pick. 405.